Case number 12-9, excuse me. Case number 14-1298. Silverado Stages, Inc. Petitioner v. Federal Motor Carrier Safety Administration at Elk. Mr. Sean for the petitioner. Mr. Sizdak for the respondent. Petitioner v. Federal Motor Carrier Safety Administration at Elk. Thank you. We have the court's indulgence for just a few minutes for the electronics. Thank you. Are you Judy? Yes. Do you believe I'm going to get you this right? Yes. Oh, my God. Judy. Yes. I thought you were doing really well. Nicely done. Oh, thank you. You've got pretty good vision. You should report everything we're doing. Yeah. Okay. Okay. Okay. Okay.  All right. Our thanks to staff, the automation division. And our thanks as well, Your Honor. My name is William Shawn. I represent Silverado Stages, an employee-owned company, and I'd like to reserve one minute for rebuttal time as well. The issue in this case, Your Honors, is pretty simple, and it really is whether or not the Administrative Procedure Act and its due process protections apply to the proceedings here in which the government, the FMCSA, posted information, violations on its website and added to those violations, information on violations, warning symbols, warning triangles, that, in effect, operate as a sanction against the carrier for results of an inspection that occurred some months beforehand. Let me just make sure I understand what your argument is. You're saying that the posting of these exclamation points and this SMS data violated some form of right of due process under the Administrative Procedure Act? That's correct, Judge Wilkinson. And what precise statutory provision are you referring to? It's the adjudication provision of the Administrative Procedure Act with an opportunity to be heard on actions taken by an agency that constitute sanctions. I think it's 553 or 552, but I'd have to check that. I don't understand. Can I ask Judge Wilkinson's question is exactly right, but let me just ask you, in view of that, the administrative agency here ruled against you in the proceeding because it said that in a 385.15 proceeding, you can only challenge your ultimate rating, not the findings, right? That's correct. It's a satisfactory rating. And you didn't challenge that interpretation of their own regulations, right? Well, we. You don't challenge that anywhere. We are challenging. Yes, we are. We're challenging that as a denial of due process because there is no means by which we have an ability to challenge the violations that are alleged and posted on the website. And what about the collateral proceedings going on in the, what do you call that system, data? What's that called? Data queue? Data queue, yeah. What about those? Sorry. What about those? Aren't you challenging those in the data queue process? We are challenging those, and we are challenging them to show that they are not due process compliant because there is no opportunity, no assurance that a challenge to these violations is ever heard. Well, then when you're finished with that or when it ends, you file an APA action in district court and you raise your arguments there. But I did not read your briefs as suggesting that you were in any way challenging. You are making some sort of vague due process argument, but I saw no challenge to the agency's interpretation of its own regulation that these proceedings, .15 proceedings, are limited to the ultimate safety rating and not the underlying findings. So it seems to me you started out by saying it's a simple case. Yeah, you're right. It seems to me that since you're not challenging the safety rating, this proceeding is over and you can proceed in the administrative proceedings to raise all the issues you want when that's over or if they all stand. Well, Judge Tingle, there actually is no administrative proceeding. That's the point. These proceedings in cyberspace, these website proceedings, go someplace we don't know where. Even as we speak today, they have never been ruled on. They have never been reconciled. Our point is that we are in time. Have you asked the agency to rule on them? Yes, we have, and we've asked repeatedly to have them ruled upon. That's what mandamus is for in the district court. Well, Your Honor, we were assured and this court was assured that those were proceedings that would resolve these types of issues. But even if those proceedings did resolve these types or were purported to resolve this proceeding, the point is they are not APA compliant. We don't have a hearing officer or anybody who can be identified who is resolving these issues. We don't have any assurance of any type of reasoned decision and response to our allegations, and ultimately we have nothing. So similar to the Weaver case, should we just, as Judge Tingle asked you, shouldn't this be brought to district court? Well, it was presented, the SMS system was presented by the government as our proceeding to resolve these issues. In other words, it was presented as the answer to the absence of any 38515 proceeding. The point is, Your Honor, that it is not, and seeking a decision in mandamus out of the district court ultimately would not resolve the issue either because these proceedings are fundamentally flawed. They are not APA compliant. Well, I mean, you can make that argument before the district court, but rather than go round and round about that, I mean, the other problem I have here is that, you know, when you were reviewing your petition that you made before the agency, you didn't really make this argument. The argument that you made, and this is at JA-9, was that basically whether or not the Administrative Procedure Act allows the agency to post these warnings and this data, your argument was that, quote, no court precedent, including the settlement that was reached, and I'm skipping some language, sanctioned the posting of erroneous safety information. And then you go on to argue, and the relief that you request at the end is to immediately expunge all negative commentary. So your argument wasn't that the agency didn't have authority to post this information. It was that we want negative information expunged. And the agency said this isn't the process for that to happen. You have a different process. End of petition. And as Judge Tatel pointed out, you didn't challenge that interpretation of the regulations. So I don't understand what it is that you want us to rule consistent with how you have litigated this, both before the agency and before us. Well, Your Honor, the response of the Federal Motor Carrier Safety Administration to the petition for administrative review was simply to say that these cases are, that a satisfactory rated carrier cannot challenge the violations and other information posted on the website. In that proceeding? In that proceeding. It didn't say anywhere. It said in that proceeding. Yes, but... Under that regulation. But the point is, a challenge under the SMS procedures, Your Honor, is not a proper challenge. It is not a viable procedure. You're not listening to what the two of us are saying. You haven't explained to us why you can't raise all of those in an administrative procedure action in the district court. Your Honor, because before the district court, these proceedings are still pending and still... To require the district court or to get an order of mandamus requiring that the SMS procedures result in some kind of a decision still leaves us with a decision that is fundamentally flawed. It is not EPA compliant. That's what the district court is for. That's where you raise it. Also, let me ask you this. The government says in its brief that it did bring an enforcement action based on these findings against your client, right? And you settled? Is that true? We did. The government originally sought over $100,000. We settled for about $15,000. And actually, some of the violations that the government... Yeah, and you could have refused to settle and raised all your issues then. No, Your Honor. We could have only raised the issues that were brought in that enforcement proceeding. Well, then how are those any different from the due process arguments you're raising here? Because the due process argument we have here is a much broader scope. The government had a narrowly tailored group of violations that it sought to prosecute us for below and in the enforcement proceeding. There are many, many other violations, and of course it didn't even address the issue of the warning symbols that have caused the carrier some substantial loss of business and problems. I don't have any other questions. I have, Your Honor. We had arranged to show some of these pages from the website, the SMS website. Is that something that you... I can't speak for my colleagues, but I've already reviewed them. You submitted them beforehand. Right. Okay. Correct. All right, so let us hear from the other side and give you some rebuttal. May it please the Court. Jerry Sinsnack, appearing on behalf of the United States. In their petition for review, as I think Your Honor's questions indicate, Silverado challenged a very particular agency action, and that was the dismissal of their 38515 petition. That's the only agency action under review here, and in dismissing the petition, the agency relied on its long-held interpretation of that regulation as allowing... Right, and you heard our questions. They all challenged that, and therefore they should raise their questions in the administrative procedure, this data cue, right? That's your position. Our position is that they should first exhaust the data cue process and then raise a challenge. And so what he said, he said there's no deadlines, there's nothing that never gets finished, it's disappeared into a void. What does he do? First of all, Your Honor, I want to be clear that the agency has responded to several of the requests that Silverado has made and had, in fact, made a change beneficial to Silverado in response to one of those. Is that in the record? It's not in the record, Your Honor, but in part because the data cue... But what about his basic point? He says... I'm sorry, do you mind? Go ahead. He says that's a completely inadequate procedure because it's all sort of off in the cyber world and there's no deadlines and it can't possibly be an adequate procedure because you never know when it's done, if it ever does get done. Are there deadlines? There are no deadlines, Your Honor, but as Your Honor pointed out, if Silverado is unhappy with how long it's taking, they can file a mandamus action or a track suit. And so what would that mean? It would say, if the district court ruled in their favor, the district court would say, agency, you have to rule on its request within 30 days? Potentially, Your Honor. They'd have to meet the mandamus standard, but that is... So every time they want to get action from the agency, they have to go to the district court and file a mandamus action? No, Your Honor, and I can assure Your Honor that the agency is working expeditiously on the remaining requests. So what is... I mean, here I own this company and this is up on the website and I think that there's some misstatements there. So I've submitted my information to this data queue process and it's presumably looking at them, but I have no idea if it is. I have no idea who's making the decision. If I disagree because data queue says we're not going to make any change, then what does it do? Well, once they exhaust the data queue process, of course, this is the Weaver case. There is no exhaustion until data queue decides to respond. So it could be a decade. Or say it's six months, all right? And so for each time, it's another six months. I mean, there's no process here. Well, Your Honor, there is a process, and the data queue's process is an adjudicatory process. The agency takes the... Where is this spelled out? It's spelled out in... There is a data queue analyst manual, which we do send... It's a manual. It's not a regulation. It's not a regulation, Your Honor. Right, so we know about manuals. Yes, Your Honor, but that's... I mean, it's neither binding on the agency and it doesn't give somebody like this company any rights. I just want to know. I own a company. I think there's some misinformation there. I'd like to get it corrected. So the agency says, go to data queue. So I go to data queue on January 1st. I hear nothing. Well, there is a response of, we've accepted your request. We are reviewing it. Ah, yes, like FOIA. We received your letter. Yes, exactly. So that was January. It's now December. I still don't have a response. So what's the answer? The answer is they are more than welcome to file a mandamus action, compelling agency... So that's my point. Every time they want to get action, they have to file a district court action that says to the agency or says to somebody... Well, Your Honor... You have to answer. There's no record... No, I'm just asking you. I'm an ongoing business. I'm out of business by December. And can I actually make one point here? Yes. The violations that are at issue here arose from a compliance review that took 4 months to complete. Okay. During that process, it was back and forth with the company. They are provided with a copy of the report. They can challenge or raise issues with the report. All I read was that the federal agency, this DataQ, then refers the matter to either the federal agency that knows something about this or to the state agency if it's a state violation. That's correct. And then what happens? Then the appropriate official will review. And I can give an example. For example, in this case, one of Sberato's DataQ's requests is they say there was an accident that occurred. And one thing is that you have to... And one violation was that they didn't report the accident. And you have to report an accident if there was a towing. So Sberato says, oh, we called the towing company that's listed on the report, and they don't have a record of that. So when we got that DataQ's request, we went out to the field, we talked to the car that was involved in the accident with Sberato's bus, and we said, did you have a towing? And they said yes. But it was by AAA. It wasn't by this other towing company. So therefore, and then we... You're getting into the weeds, and I'm trying to understand the process. I mean, that is... Am I out there with the towing company? Do I know who that is? Do I get a chance to depose them? You can submit any information you would like in your data. If I know what's going on. All right. So then the state looks at it and says, nope, there's a violation. So we're not making any change in the report we gave to the federal agency. And then... Then what? Then it's a Weaver case. They file an APA action or some other action in this court if they think it falls under the Hobbs Act. In this court? I thought Weaver said... Yes. Weaver says it's not a Hobbs Act case. Presumably, yes. Wait, wait, wait. What do you mean presumably? Well, Weaver... Your Honor, I agree with you. It's most likely Weaver would require it to be in the APA case. Weaver says... Weaver says that... That... Weaver says in a petition for review case like this that the agency's decision not to review the violation didn't qualify as a final order under the Hobbs Act. Didn't it? Yes, Your Honor. Okay. So what's the presumably part of it? The only reason I hesitate is that in the facts of Weaver, it was a state violation and the state... So the state was the respondent. I'm sorry. So if it was... In this case, it's actually federal investigators. But why would that make a difference in terms of our jurisdiction? The only thing I can think of is if this court, and I don't say that this is true or that we would necessarily argue this, but this court could find that it was a federal actor and so therefore it was a final order of the FMCSA rather than of the state. So if that played any role, and I don't think it did, but if that played any role in the Weaver decision. But I think you're right. The most likely result would be an APA action. But here there is no action at all, right? There's no action relative to the data cues request. No. The only petition for review is the 38515 petition, and that was dismissed. And as your Honor pointed out, there's nothing in the brief that suggests that that action... So I'm just curious about the data cue system. Do you know the system pretty well? Do you know how it works? Reasonably well, yes. So how is it working? I mean, is the system generally correcting problems to people's satisfaction? Is there a lot of litigation over it? I'm not familiar with any other litigation other than the Weaver case, and that was where it was resolved by the agency. I'm not familiar with any litigation involving the time it takes, for example, to resolve issues. I know that the agency has received several thousand. But there are no deadlines in the system. But there are no specific deadlines. Several thousand what? Could I just be clear? Several thousand data cue requests to correct information that's on the website. Several thousand? I believe so, yes. And who is data cue? I mean, does that go to one person's desk? I can't say exactly how many investigators there are. It goes to whoever was responsible. Ultimately, for example, in this case, it was the California Department of FMCSA that reviewed, that concluded the compliance review, and that's who was handling the data cues requests. And since they're related to that issue, I don't know how many back office people get the initial request. But I can say, in this case, just to emphasize that the agency has actually responded to a number of them already. So although there are some that are still outstanding, the agency has responded to a number. And they were only filed in March of last year. So they've responded to a number, and they will expeditiously respond to the rest. March of last year? I'm a business counsel. Has the agency, you say responded. Have any of those involved rejections? I mean, refusal to change the... I believe so, Your Honor. Although I'd have to confirm, I don't think they've made every change in every one. I believe there are about a dozen that they've responded to. I presume, but I'd have to get the details on it. So all this can be developed in the district court record? After the data cues process has been exhausted. Well, that's what I'm getting at. Or if they file a mandamus action. I mean, March of last year. Could I ask a question? How do we know, or how does anybody know, when the data cue process is exhausted? What does exhaustion look like? They will receive a notification from the agency, either that we've made this change in response to what you've requested, or we're not making any changes. And that's what happened in the Weaver case. And can they appeal that, or petition to the administrator of the agency? There's no appeal within the... As far as I know, they can submit another data cues request if they have more information or something. Or if they feel like something was an error, but there's no formal appellate within the agency. Let's suppose there's a warning based on some incident that happened, and it was based on some sort of action by a state agency. And in the data cue process, the company said, we don't know what you're talking about. That wasn't our bus. And we've actually got video footage from a police DASCAM or something that shows that it was a different bus company whose bus was involved in this incident, and somehow it was identified as our bus, and we want you to fix it. Data cue would send it to the state agency, right? That's right. And let's suppose the state agency says, we don't care. We're not going to take this off of your record. And despite the fact that there's this pretty indisputable evidence, the state agency refuses to take action. What would data cue do then? Your Honor, obviously that's not the facts here, because these are all violations found by a federal agency. Unfortunately, I can't answer your question. I think the answer is probably that the state's decision is final on any state violation, but I don't know if there's a... I mean, that's the way I read the process, because your brief and the materials attached here say that, you know, all we do is kind of communicate information, and so, you know, if information is provided to us, we'll pass on your complaint about the quality of that information to whoever gave it to us, but ultimately that's between you and them. Isn't that the lesson, too, from Weaver? I mean, yes, that is how the system works. Although, I mean, I would emphasize as a general matter this is safety information that the agency is making available to the public. It doesn't itself have legal consequences. It might have practical consequences, but it does not have, and this Court has said many times, the mere publication of safety information for public consumption is not final agency action. It's not a due process deprivation. But, you know, there'll be those arguments when we eventually reach the point where there's some challenge to... So if the agency, the federal agency, knows that there's something that's false, or knows or should know that there's some false information and they've been given by a state, if the state refuses to, say, withdraw it, the agency can still publish it and there's kind of no legal ramifications there? Well, Your Honor, I mean, again, that's not hypothetical. I think we'd have to evaluate. This Court has said in cases like industrial safety equipment that a knowing falsity with an intention to penalize might qualify as a due process violation or something like that. But that would be for some other day. That is not... You know, the allegations here, that is not... You know, they have not exhausted the process. The only issue here is the review of the 385.15 petition and the dismissal, and on those grounds, the agency did not act arbitrarily and confuciously in interpreting its regulations not to require it to consider these other violations. Nothing. Further questions? No. Thank you. All right. Counsel for petitioner? Judge Rogers, I think you hit the nail on the head and Judge Wilkins did, too, in that every time that we perceive or need a remedy under these procedures, do we really have to go to the district court and get a mandamus order? These regulations, 385.15, are obviously flawed. They do not provide for due process because there is no ability to reasonably challenge this information that is posted. And Judge Wilkins, you asked... We have many cases in this circuit where district courts, using their mandamus authority, issue injunctions that deal with just that problem so that that doesn't happen in the future. Well... That's what mandamus is for. Well, that's right. But the entire... This entire structure is just an invitation for unlimited mandamus actions that individual parents... No, you misunderstood my point. The district court, using its mandamus authority, can, if there are constitutional problems here, as you say, remedy them in the system. Well, Your Honor, the regulation is fundamentally flawed. There is no means of challenging this information under what purportedly is a full safety administration proceeding. And Judge Wilkins, when you noted that information erroneously, or erroneous information could be posted, that's exactly what we have in the Joint Appendix. I think it's the Minnesota Trucking Association's comments. There, even after state proceedings were dismissed, the agency still refused to remove that information and to correct the record. What we have here is a cyber administration which is completely outside the proper scope of administration. We have a system where there are no checks and balances, where there is no due process, where we've had our important proceedings in, our important RDRs, as they're called, before the data queue system in, noting that we've lost over $12 million in lost contracts this year because of these flags, these warning symbols, and there is no expectation, no possibility that we know of that we're ever going to receive any kind of response. This information goes into a black hole. It is a clear denial of due process. We submit that this court has the authority to strike down these regulations and these practices because they amount to rules and regulations which have never been properly promulgated, and we should not have to have individual proceedings before district courts in seeking mandamus as an alternative to this court striking down the procedures under 385.15 as unlawful because they effectively create a regime without a remedy. All right. Thank you. We will take the case under advisement.
judges: Rogers, Tatel, Wilkins